IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ROBERT SMITH, | ) | CASE NO. 1:13-CV-2357 |
| | ) | |
| Plaintiff, | ) | JUDGE DONALD C. NUGENT |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| | ) | KENNETH S. McHARGH |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY ADMINISTRATION, | ) | **REPORT & RECOMMENDATION** |
| | ) | |
| Defendant. | ) | |

This case is before the Magistrate Judge pursuant to Local Rule 72.2(b). The issue before the undersigned is whether the final decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff Robert Smith's ("Plaintiff" or "Smith") application for Supplemental Security Income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq*, is supported by substantial evidence and, therefore, conclusive.

For the reasons set forth below, the Magistrate Judge recommends that the decision of the Commissioner be AFFIRMED.

**I.  PROCEDURAL HISTORY**

Smith filed an application for Supplemental Security Income benefits on April 29, 2011. (Tr. 148). Plaintiff alleged he became disabled on January 1, 2011 due to suffering from lung and chest issues, internal complications, lung failure, and shoulder troubles. (Tr. 171). The Social Security Administration denied Plaintiff's application on initial review and upon reconsideration. (Tr. 88-104).

At Plaintiff's request, administrative law judge ("ALJ") Peter Beekman convened an administrative hearing on May 23, 2012 to evaluate his application. (Tr. 30-49). Plaintiff,

1

represented by counsel, appeared and testified before the ALJ. (*Id.*). A vocational expert ("VE"), Nancy Borgeson, Ph.D., and a medical expert, Donald Junglas, M.D., also appeared and testified. (*Id.*).

On July 3, 2012, the ALJ issued an unfavorable decision, finding Plaintiff was not disabled. (Tr. 15-24). After applying the five-step sequential analysis,[1] the ALJ determined Plaintiff retained the ability to perform work existing in significant numbers in the national economy. (*Id.*). Subsequently, Plaintiff requested review of the ALJ's decision from the Appeals Council. (Tr. 9-10). The Appeals Council denied the request for review, making the ALJ's July 3, 2012 determination the final decision of the Commissioner. (Tr. 1-4). Plaintiff now seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 1383(c)(3).

---

[1] The Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a determination as to "disability." *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The Sixth Circuit has summarized the five steps as follows:

(1) If a claimant is doing substantial gainful activity–i.e., working for profit–she is not disabled.

(2) If a claimant is not doing substantial gainful activity, her impairment must be severe before she can be found to be disabled.

(3) If a claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

(4) If a claimant's impairment does not prevent her from doing her past relevant work, she is not disabled.

(5) Even if a claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that accommodates her residual functional capacity and vocational factors (age, education, skills, etc.), she is not disabled.

*Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990); *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).

## II. EVIDENCE

### A. Personal and Vocational Evidence

Smith was born on November 3, 1959, and was 52-years-old on the date the ALJ rendered his decision. (Tr. 148). Accordingly, Plaintiff was considered to be "a person closely approaching advanced age" for Social Security purposes. *See* 20 C.F.R. § 416.963(d). Plaintiff completed high school, two years of specialized job training in auto body work, and two years of specialized training in auto mechanics. (Tr. 172). Smith has past relevant work as dishwasher/kitchen helper and a spot welder. (Tr. 45-46).

### B. Medical Evidence[2]

On September 16, 2011, Smith underwent a consultative psychological evaluation with state agency physician Matthew Paris, Psy.D. (Tr. 369-77). Plaintiff complained that over the past year, he experienced depression, and he described feelings of worthlessness, a lack of motivation, irritability, and social withdrawal. (Tr. 369, 372). Smith explained that he had not experienced a depressive episode until the last few months, but in light of recent health problems causing him serious physical pain, he had thoughts of death or dying. (Tr. 372). However, he denied formulating suicidal plans, and he did not have a history of outpatient psychotherapy treatment, manic or psychotic symptoms, or post-traumatic stress disorder. (*Id.*). Smith reported poor concentration and memory, organizational problems, abstraction problems, and difficulty learning new material. (Tr. 372-73).

In terms of daily living, Plaintiff explained to Dr. Paris that he tried to keep busy with activities, such as fixing his bike, in order to fight depression. (Tr. 373). Smith stated that he did not like to be around people, and although he left his home, he still tried to stay away from

---

[2] The following recital of Plaintiff's medical record is an overview of the medical evidence pertinent to Plaintiff's appeal. It is not intended to reflect all of the medical evidence of record.

3

others. (*Id.*). Plaintiff could care for his own hygiene, cook, clean, do laundry, and shop. (*Id.*). At the time of the examination, he was living with his niece. (Tr. 370).

Dr. Paris indicated that Smith had a history of antisocial personality disorder. (Tr. 371). Plaintiff had been arrested at least twice for burglary, subsequently spending one year in jail and several months on probation. (*Id.*). Smith was also incarcerated for eight years for assault with intent to kill, but had not committed a criminal act for the last 20 years. (*Id.*). In terms of work history, Plaintiff worked as a dishwasher and was let go after approximately three years due to downsizing. (Tr. 372). He also worked as a driver for a railroad company for nine years, but lost the job after his driver's license was revoked for failure to pay child support. (*Id.*). Plaintiff stated that he did not like people, but found a way to work with them while employed. (*Id.*). Smith also explained that people frustrated him on a daily basis. (*Id.*).

Upon performing a mental status examination, Dr. Paris observed that Plaintiff was unshaven and malodorous. (Tr. 373). However, Smith made appropriate eye contact. (*Id.*). There were times that Plaintiff became frustrated with questions, but overall he was cooperative with the evaluation. (*Id.*). Smith's speech was unremarkable; his thought processes were coherent and goal-directed; and there was no evidence of paranoid thought patterns. (*Id.*). Smith exhibited a depressed affect, and his insight and judgment were fair. (Tr. 373-74). He was alert and oriented. (Tr. 374). Dr. Paris opined that Plaintiff's attention and concentration, as well as recent and remote memory skills were mildly impaired. (*Id.*). His intellectual functioning appeared to be in the low average range. (*Id.*).

Dr. Paris diagnosed major depressive disorder (single episode, moderate) and antisocial personality disorder. (*Id.*). The doctor opined that Smith's prognosis was fair and assigned an overall Global Assessment of Functioning ("GAF") score of 57, representing moderate

4

symptoms.[3] (Tr. 375). Dr. Paris noted that Plaintiff was not on psychotropic medication due to a lack of insurance. (Tr. 376).

Regarding Smith's work-related abilities, Dr. Paris opined as follows:

- Plaintiff has no limitations in his ability to understand and carry out instructions.
- Plaintiff can perform simple and multi-step tasks. There are some limitations with regard to his attention and concentration, as well as persistence and pace, due to medical and psychological symptoms.
- Plaintiff has an antisocial personality disorder and does not like being around people. He has a low frustration tolerance, is frequently irritated, and utilizes antisocial thought processes. As a result, he has limitations in his ability respond appropriately to supervision and to coworkers.
- Plaintiff is unlimited his ability to respond appropriately to work pressures in a work setting.

(Tr. 376).

On November 20, 2011, state agency reviewing psychologist Todd Finnerty, Psy.D., conducted a review of the record. (Tr. 75-77). As to maintaining attention and concentration, Dr. Finnerty opined that Smith had moderate limitations due to depression. (Tr. 76). The doctor also noted that Plaintiff would likely have difficulty working "in close approximation with others." (*Id.*). He determined that Smith could perform routine repetitive tasks without a fast pace. (*Id.*). In regard to social interaction, doctor opined that Smith was moderately limited in his ability to interact with the public, accept instructions and respond appropriately to criticism from supervisors, and get along with coworkers or peers without distracting them or exhibiting behavioral extremes. (*Id.*). Dr. Finnerty concluded that Smith should be limited to "superficial contact [with] others" due to his antisocial personality disorder. (Tr. 77).

---

[3] A GAF score "is a clinician's subjective rating, on a scale of zero to 100, of an individual's overall psychological functioning." *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 503 n.7 (6th Cir. 2006) (*citing* DSM-IV-TR at 34). A score of zero represents the most severe level of impairment in psychological functioning, and a score of 100, the most superior. *Id.* A GAF score in the range of 51-60 indicates "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)."

### III. SUMMARY OF THE ALJ'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1. Mr. Smith has not engaged in substantial gainful activity since April 29, 2011, the application date.

2. Mr. Smith has the following severe impairments: chronic obstructive pulmonary disease (COPD), antisocial personality disorder, affective disorder, and history of forearm fracture.

3. Mr. Smith does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

4. After careful consideration of the entire record, I find that Mr. Smith has the residual functional capacity to perform light work as defined in 20 C.F.R. 416.967(b) except:

   - He can lift, carry, push, or pull 20 pounds occasionally and 10 pounds frequently.
   - He can stand or walk for a total of four out of eight hours, and sit for six out of eight hours.
   - He can occasionally use a foot pedal.
   - He can occasionally climb ramps or stairs, but never ladders, ropes, or scaffolds.
   - He can constantly balance, occasionally stoop or crouch, and never kneel or crawl.
   - He can reach overhead occasionally with the left hand and frequently with the right hand, which is dominant.
   - He can handle and finger constantly with the right hand, frequently with the left hand.  He can feel constantly bilaterally.
   - He should avoid high concentrations of smoke, fumes, dust, and pollutants.
   - He should avoid unprotected heights.
   - He should do no complex tasks but can do simple routine tasks.
   - He can do low stress work with no high production quotas or piece rate work.
   - He can do no work involving arbitration, confrontation, or negotiation.
   - He should have only superficial interaction with the public, where contact is for a short duration and for a specified purpose.

5. Mr. Smith is unable to perform any past relevant work.

6. Mr. Smith was born on November 3, 1959 and was 51 years old, which is defined as an individual closely approaching advanced age, on the date he filed the application.

7. Mr. Smith has at least a high school education and is able to communicate in English.

. . .

9. Considering his age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that he can perform.

10. Mr. Smith has not been under a disability, as defined in the Social Security Act, from April 29, 2011, the date he filed the application.

(Tr. 17-23) (internal citations omitted).

### IV. DISABILITY STANDARD

A claimant is entitled to receive Disability Insurance and/or Supplemental Security Income benefits only when she establishes disability within the meaning of the Social Security Act.  *See* 42 U.S.C. §§ 423, 1381.  A claimant is considered disabled when she cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months."  *See* 20 C.F.R. §§ 404.1505, 416.905.

### V.  STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether, based on the record as a whole, the Commissioner's decision is supported by substantial evidence, and whether, in making that decision, the Commissioner employed the proper legal standards. *See Cunningham v. Apfel*, 12 F. App'x. 361, 362 (6th Cir. 2001); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been defined as more than a scintilla of evidence but less than a preponderance of the evidence. *See Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed. *Id.* The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this Court would resolve the issues of fact in

7

dispute differently or substantial evidence also supports the opposite conclusion. *See [Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986)](#)*; *[Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir. 1983)](#)*. This Court may not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility. *See [Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984)](#)*. However, it may examine all the evidence in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's final decision. *See [Walker v. Sec'y of Health & Human Servs., 884 F.2d 241, 245 (6th Cir. 1989)](#)*.

## VI. ANALYSIS

### A. Whether the ALJ adequately accounted for Plaintiff's limitations when determining the residual functional capacity

Smith argues the ALJ erred in failing to include a restriction limiting his interactions with supervisors and co-workers. Plaintiff contends that the ALJ did not include such a limitation despite the fact that state agency physicians Drs. Paris and Finnerty determined limitations were appropriate.

In his RFC assessment, one-time consultative examiner Dr. Paris opined, in relevant part, that Plaintiff "does not like being around people. He has a low frustration tolerance, is frequently irritated, and utilizes antisocial thought processes. As a result, he has limitations in his ability to respond appropriately to supervision and to coworkers." (Tr. 376).

Subsequent to Dr. Paris's examination of Plaintiff, Dr. Finnerty conducted a review of the record. Dr. Finnerty gave "great weight" to Dr. Paris's opinion upon review. (Tr. 73). In turn, Dr. Finnerty found Plaintiff was moderately limited in interacting with the public, responding to supervisors, and getting along with coworkers or peers. (Tr. 76). Dr. Finnerty concluded that Smith would be limited to superficial contact with "others" because of his antisocial personality disorder. (Tr. 77).

8

It is well established that an ALJ is not required to discuss every piece of evidence in the record for a determination to stand. *See, e.g.*, *Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 665 (6th Cir. 2004). But where the opinion of a medical source contradicts the ALJ's RFC finding, the ALJ should explain why he did not include its limitations in his determination of a claimant's RFC. *See, e.g.*, *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 881 (N.D. Ohio Mar. 1, 2011). Social Security Ruling 96-8p also explains that "[i]f the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p, 1996 WL 374184, *7 (July 2, 1996).

In regard to Dr. Paris, the ALJ's opinion expressly delineates why the ALJ attributed "little weight" to the psychologist's opinion that Smith was "limited" in his ability to respond appropriately to supervision and co-workers. (Tr. 21). Additionally, the ALJ's reasoning is substantially supported by the record. As the ALJ explained, Dr. Paris's limitation was based, at least in part, on Plaintiff's personal report that he was socially isolated. (*Id.*). Yet, the ALJ observed that Smith made statements to other medical sources contradicting his report of social isolation to Dr. Paris. (*Id.*). For instance, the ALJ noted that one month before the examination with Dr. Paris, Smith underwent an internal medicine examination during which he told the examining the physician that he socializes with friends. (Tr. 21, 359). A few months after the examination, Smith was treating for shoulder pain when he reported living with a friend. (Tr. 21, 516). Such contradictory statements serve as reasonable grounds for the ALJ to devalue the limitations Dr. Paris prescribed, which were partly based on Plaintiff's report.

As to Dr. Finnerty, the ALJ assigned "great weight" to the doctor's opinion. (Tr. 21). In assigning such weight, the ALJ explained that Dr. Finnerty's findings were consistent with the opinion of Dr. Paris and Plaintiff's reports of social contact before and after his examination.

9

(*Id.*). Although the ALJ attributed "great weight" to Dr. Finnerty's opinion and found it consistent with other evidence of record, the RFC does not seem to fully reflect the psychologist's restrictions. Dr. Paris found Plaintiff should be limited to superficial contact with "others." (Tr. 77). The term "others" likely encompassed supervisors, co-workers, and the public, because the reviewing psychologist opined Plaintiff suffered from moderate limitations in his ability to interact with all three of these groups. (Tr. 76). However, the RFC does not include restrictions specifically limiting contact with supervisors and co-workers. It appears that the ALJ overlooked the breadth of Dr. Finnerty's recommendation.

While the ALJ's opinion is flawed in this regard, remand is not appropriate here. "No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result." *Shkabari v. Gonzales*, 427 F.3d 324, 328 (6th Cir. 2005) (*quoting Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989)). *See also Kobetic v. Comm'r of Soc. Sec.*, 114 F. App'x 171, 173 (6th Cir. 2004) (When "remand would be an idle and useless formality," courts are not required to "convert judicial review of agency action into a ping-pong game.") (*quoting NLRB v. Wyman-Gordon Co.*, 394 U.S. 759, 766, n. 6, 89 S.Ct. 1426, 22 L.Ed.2d 709 (1969)).

To remand on this point in the present case would be futile. The ALJ's discussion devaluing Dr. Paris's finding that Smith was limited in his ability to interact with supervisors and co-works provides sufficient insight as to why the ALJ would not have incorporated Dr. Finnerty's similar limitation into the RFC. As the ALJ explained, Smith's own statements contradicted his claims of social isolation, undermining a limitation in his ability to interact with others. Further, Dr. Finnerty based his opinion on a review of record evidence relating to Plaintiff's mental health, which seems to be largely, if not entirely, based on Dr. Paris's report.

10

The ALJ discredited Dr. Paris's limitation as it related to co-workers and supervisors, as previously noted herein, and his decision to do so was substantially supported.

The ALJ's opinion also provides additional insight as to why the RFC did not fully incorporate Dr. Finnerty's limitation.  For example, the ALJ highlighted that despite Plaintiff's dislike of other people, Plaintiff admitted that he found a way to work with others throughout the many years he was employed. (Tr. 21, 372).  In addition, the ALJ pointed out that during the administrative hearing, Plaintiff affirmed that he visits with friends. (Tr. 18, 36).  The Court also notes that the RFC prohibits Plaintiff from performing work involving arbitration, confrontation, or negotiation, which would seem to have the effect of restricting Plaintiff's interactions with others, even though the limitation does not directly identify supervisors or co-workers. (Tr. 19).

**B.  Whether the ALJ's step five finding is substantially supported**

Additionally, Plaintiff asserts that the ALJ did not carry his burden of proof at Step Five of the analysis to show that Plaintiff can perform a significant number of other jobs.  Smith argues that the representative occupations identified by the VE had a developmental reasoning level of "3."  Plaintiff contends that based on the Dictionary of Occupational Titles' ("DOT") definition of this reasoning level, the skill required to perform jobs at reasoning level three exceeds the ALJ's finding that Smith is limited to simple, routine tasks.

Plaintiff's argument lacks merit.  To begin, Smith cites no authority indicating that jobs requiring a reasoning level three are inconsistent with a limitation to simple routine work.  Additionally, in *Monateri v. Comm'r of Soc. Sec.*, 436 F. App'x 434, 446 (6th Cir. 2011), the Sixth Circuit rejected the proposition that "[DOT] jobs requiring reasoning levels two or three are inconsistent as a matter of law with a limitation to simple work."  The Court explained that the regulations, 20 C.F.R. §§ 404.1566(d) and 416.966, instruct the ALJ to take administrative

11

notice of reliable job information from the DOT; however, the ALJ and VE are not obligated to rely on the DOT's classifications. *Id.* (*quoting Wright v. Massanari,* 321 F.3d 611, 616 (6th Cir. 2003)). It concluded that "neither the Commissioner nor the VE has an obligation to employ the DOT, and there is no precedent that requires the Commissioner to align DOT 'reasoning levels' with RFC classifications." *Id.* Accordingly, Plaintiff's argument that jobs with a reasoning level three are incompatible with a limitation to simple routine work fails.

## VII. DECISION

For the foregoing reasons, the Magistrate Judge finds that the decision of the Commissioner is supported by substantial evidence. Accordingly, the undersigned recommends that the decision of the Commissioner be AFFIRMED.

s/ Kenneth S. McHargh<br>
Kenneth S. McHargh<br>
United States Magistrate Judge

Date: September 16, 2014.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See Thomas v. Arn,* 474 U.S. 140 (1985), *reh'g denied,* 474 U.S. 1111 (1986); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).